# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   22-MR-1607
6 Mustang Rd, Edgewood, New Mexico, 87015  )
  )
  )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of New Mexico, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of and possession with intent to distribute controlled substances |
| 21 U.S.C. § 846 | Conspiracy |

The application is based on these facts:
Please see the attached affidavit of OSI Special Agent Ellise Brennan, which is incorporated by reference and has been reviewed and approved by AUSA Timothy Vasquez.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

BRENNAN.ELLISE.M.1540351208
Digitally signed by BRENNAN.ELLISE.M.1540351208
Date: 2022.11.01 12:17:20 -06'00'

*Applicant's signature*

Ellise Brennan, OSI, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephonically sworn and electronically signed   *(specify reliable electronic means)*.

Date: 11/01/2022

*Judge's signature*

City and state: Albuquerque, New Mexico        Honorable Jerry H. Ritter, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES LOCATED AT 6 MUSTANG ROAD, EDGEWOOD, NEW MEXICO | Case No. 22-MR-1607<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ellise M. Brennan, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I, SA Ellise Brennan, make this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 6 Mustang Road, Edgewood, New Mexico, hereinafter "TARGET PREMISES," further described and depicted in Attachment A, for the items described in Attachment B.

2. I am a Special Agent (SA) with the Department of Air Force (DAF), Office of Special Investigations (OSI), and have been employed by OSI since May 2022. I am an investigative law enforcement officer of the United States, and I am empowered by law to conduct criminal investigations for felony offenses. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Criminal Investigations Training Program (CITP) and a graduate of the United States Air Force Special Investigations Academy (USAFSIA) Basic Special Investigations Course (BSIC) in Brunswick, Georgia. Prior to becoming a Special Agent, I attended the University of St. Thomas in Minnesota where I received a Bachelor of Science (B.S.) in Mechanical Engineering, a Bachelor of Art (B.A.) in Arabic, and I commissioned into the United States Air Force.

3. Throughout my law enforcement career, I have received training and gained experience pertaining to federal criminal procedures, federal criminal statutes, Uniform Code of Military Justice (UCMJ) law, and military criminal procedures. In my career, I have led and assisted in investigations pertaining to child exploitation material, domestic violence, suicide, child abuse, aggravated assault, attempted murder, kidnapping, and drug use and distribution. I have worked joint investigations with local and federal law enforcement agencies...

4. In addition to my training and experience, I have developed information I believe to be reliable from additional sources including, but not limited to:

  a. Information provided by Special Agents, enforcement officials ("Agents"), including oral and written reports that I have received directly or indirectly from said investigators;

  b. Sources of Information (SOI);

  c. Confidential Source (CS);

  d. Results of physical surveillance conducted by agents during this investigation;

  e. A review of driver's license and automobile registration records;

  f. A review of LexisNexis data base for housing registration; and

  g. Searches of property based on military commander's authority.

5. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are relevant to the determination of probable cause to support the issuance of the requested warrant. When the statements of others are set forth in this Affidavit, they are set forth in substance and in part.

6. Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841 and 21 U.S.C. § 846, have been committed, are being committed, and will continue to be committed using the TARGET PREMISES.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## RELEVANT CRIMINAL STATUTES

8. I believe there is probable cause that the SUBJECTS have committed, are committing, and will continue to commit offenses involving violations of:

   21 U.S.C. § 841 – Distribution and possession with intent to distribute controlled substances; and

   21 U.S.C. § 846 – Conspiracy to distribute and possess with intent to distribute controlled substances.

## EVIDENCE SOUGHT DURING SEARCH

9. Based on my training, experience, and participation in this and in similar investigations, I believe that individuals involved in drug trafficking often conceal evidence of their activities in their residences and in surrounding areas to which they have ready access such as garages, carports, sheds, and outbuildings. They also conceal evidence in vehicles, including vehicles outside of their residences and businesses, so that they have ready access to it and so that they can hide it from law enforcement, including law enforcement officers executing search warrants at their residences or businesses. Evidence also may be found in other areas to which a

drug dealer has ready access, such as rented storage areas and safety deposit boxes, or buried underground on their property.  This evidence, which is discussed in detail in the following paragraphs, includes drugs being stored in and distributed from the TARGET PREMISES and similar areas including storage buildings, vehicles, and structures on the TARGET PREMISES.

10. Drug dealers often use storage facilities for drugs and other items related to human smuggling and trafficking that are at a location away from their residences and businesses. These off-site storage facilities are often commercial storage lockers and rooms. These locations are often used to store or hide drugs, contraband, money, fraudulent documents, and other valuables. Drug dealers often keep documents and other items tending to show the existence of other stored drugs, contraband, money, fraudulent documents, and other valuables in areas such as storage facilities.  Those documents and other items include rental agreements, receipts, keys, notes, and maps specifically concerning off-site storage rooms. This evidence may be found on their person or in their businesses, residences and surrounding garages, outbuildings, carports and yards, the residences of friends or relatives, and cars.

11. Evidence of significant, unexplained income of drug dealers or for the acquisition and concealment of money and assets of drug sales and/or their human smuggling efforts, can be found on banking and investment account statements, credit card account statements, canceled checks, money orders, deposit slips, check and savings books, business and personal ledgers, accounting records, safe deposit box records and keys, federal and state tax records, rental receipts, rental agreements, utility bills, overnight mail receipts, telephone bills, loan statements records reflecting ownership of real or personal property (such as deeds of trust or vehicle registration, insurance, and ownership information), vehicle and property rental records, lease and purchase agreements, and canceled mail.  These records can be maintained on paper, but also

can be maintained as electronic data on computers and other digital media. The above items are typically kept by drug dealers on their person or in their businesses, residences and surrounding garages, outbuildings, carports, and yards, the residences of friends or relatives, and vehicles.

12. The use of digital media, including smartphones, tablets, cellular phones, and digital devices, has become part of everyday life. This is also true for drug dealers. Information stored in electronic form on all of the above devices can provide evidence of human smuggling and/or drug trafficking. Drug dealers frequently use some or all of these devices to communicate with co-conspirators, customers, sources of supply, and others involved in the drug and human smuggling trade. These communications include, but are not limited to, phone calls, text messages, SMS (Short Message Service) messaging, MMS (Multimedia Messaging Service) messaging, social media posts and messaging, and smartphone application messaging services. Smartphones, tablets, cellular phones, and digital devices are frequently capable of storing messages, emails, social media communications, and communications made over smartphone applications. The content of these communications will often provide evidence of human smuggling or drug trafficking. Numbers stored on a telephone (such as Caller ID lists reflecting recently received calls, speed dial lists of names and/or telephone numbers, and logs of outgoing and incoming calls) can provide evidence of who the drug dealer or human smuggler is calling, and thus the identity of potential associates.

13. Drug dealers often maintain firearms and ammunition on their person or in their homes, businesses or cars to protect themselves, the undocumented persons they are smuggling into or across the United States, their associates, their drug supply, and their profits. They also may maintain indicia of firearms such as receipts for firearms and ammunition, boxes for firearms and ammunition, firearms cleaning supplies, and instruction manuals and other

documentation for firearms and ammunition. I know that weapons (including rifles, shotguns, and handguns) are tools of the trade for drug traffickers, who often keep firearms in close proximity to themselves and their contraband to protect them from other smugglers, traffickers, and law enforcement.

14. Documents showing who owns, occupies, or controls the location being searched also show who is responsible for the items found on the premises, including contraband, drugs and other evidence seized. Documents and items showing the identity of the persons owning, residing in, or controlling the area being searched include, but are not limited to, utility and telephone bills, canceled envelopes and correspondence, outgoing answering machine messages, tax returns, keys, deeds and mortgage receipts. These documents may also be produced on computers, downloaded from online accounts or scanned into digital format and stored on computers and related digital media.

15. Based on my training and experience, particularly my experience relating to the investigation of properties such as the one listed in Attachment A, I know that it is common for drug traffickers to keep evidence of their crimes throughout their properties. I further know that all of the evidence described above could be located not only in the main residence, adjoining or adjacent building sharing the same property, but also in garages, outbuildings, storage containers, safes, safety deposit boxes, sheds, barns, vehicles, and even buried in the ground.

## COMPUTERS, ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. As described above and in Attachment B, this application seeks permission to search for evidence and records that might be found on the property of the TARGET PREMISES in whatever form they are found. Much of the evidence and records described in the paragraphs above, and in Attachment B, can also be produced and/or stored on computers, digital media and

other storage media, such as computer hard drives, external hard drives, thumb drives, secure digital cards and other types of flash memory cards, compact disks and floppy disks, personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones. For this reason, I submit that if a computer aided digital medium or storage medium is found on the property of the TARGET PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B). Because several people appear to share the TARGET PREMISES, it is possible that the TARGET PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

17.   *Necessity of seizing or copying entire computers or storage media*. In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following.

a.   *The time required for an examination*. As noted above, not all evidence takes the

form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

  b. *Technical requirements*. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

  c. *Variety of forms of electronic media*. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

  18. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying computers and/or storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited

to computer-assisted scans of the computer or entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## INVESTIGATION

19. During the month of July 2022, the Office of Special Investigations (OSI), received notification from a Source of Information (SOI) in reference to active-duty military members consuming and distributing psilocybin mushrooms on and around Kirtland Air Force Base (KAFB), New Mexico. OSI Special Agent (SA) Ellise Brennan and Investigator (Inv) Daniel Thien received SnapChat messages from the SOI that indicated Active Duty military member ISAAC SHIFLETT sold psilocybin mushrooms to a Confidential Source (CS) in July 2022. Additionally, SOI stated SHIFLETT had used psilocybin mushrooms.

20. In September 2022, OSI Agents conducted a search based on military authority of CS's cell phone which indicated SHIFLETT sent CS the address for the TARGET PREMISES over SnapChat.

21. In October 2022, CS was interviewed by OSI Agents. CS stated that he met SHIFLETT in the Summer of 2022 through the SOI. CS had previously consumed psilocybin mushrooms with SHIFLETT and bought psilocybin mushrooms from SHIFLETT. In August 2022, CS drove SHIFLETT to 6 Mustang Road, Edgewood, New Mexico (the TARGET PREMISES) in order to purchase psilocybin mushrooms from an AUSTIN GATICA, a member of the Air National Guard (ANG), who lived at that residence. GATICA sold psilocybin mushrooms to SHIFLETT that he, SHIFLETT, retrieved from a shed on TARGET PREMISES. CS saw psilocybin mushrooms and marijuana in the shed on TARGET PREMISES. CS saw the psilocybin mushrooms GATICA sold SHIFLETT were packaged in clear plastic bags and placed

in what appeared to be a soda can. SHIFLETT later sold CS the psilocybin mushrooms on KAFB. SHIFLETT paid GATICA via Cash App and CS paid SHIFLETT via Cash App.

22.   SnapChat messages seized from CS showed conversation between SHIFLETT and CS communicating about the TARGET PREMISES. During a meet with CS, CS identified the TARGET PREMISES as the residence of GATICA where CS and SHIFLETT purchased psilocybin mushrooms. CS stated he has seen GATICA package the psilocybin mushrooms in soda cans for concealment.

23.   A review of GATICA's records indicate he works as a full-time ANG member alongside Active Duty military members including SHIFLETT. GATICA works with an Active Duty military squadron.

24.   In October of 2022, SHIFLETT called CS and asked CS if he wanted to trip on psilocybin mushrooms. CS told SHIFLETT he was busy that day. SHIFLETT sent CS a SnapChat picture of SHIFLETT drinking a liquid tea. CS stated it was normal for SHIFLETT and CS to make the psilocybin mushrooms into a liquid tea for consumption in order to get high.

25.   In October of 2022, CS purchased $25.00 of psilocybin mushrooms from SHIFLETT on KAFB in a controlled drug purchase organized by OSI. OSI seized SnapChat messages between SHIFLETT and CS organizing the purchase of psilocybin mushrooms. CS paid SHIFLETT via Cash App.

26.   On 21 October 2022, CS asked SHIFLETT for psilocybin mushrooms. SHIFLETT called CS and asked him if he wanted to go to TARGET PREMISES to get psilocybin mushrooms and make the psilocybin mushrooms into tea for consumption. CS stated he was busy but asked SHIFLETT to bring back 1 gram of psilocybin mushrooms for CS. SHIFLETT agreed to bring CS psilocybin mushrooms. OSI seized SnapChat Messages between

SHIFLETT and CS indicating SHIFLETT would bring CS psilocybin mushrooms. That evening, SHIFLETT called CS and stated he was driving to TARGET PREMISES. CS confirmed SHIFLETT would bring CS psilocybin mushrooms from TARGET PREMISES. SHIFLETT told CS he was making the psilocybin mushrooms into a tea at TARGET PREMISES. Later in the evening, SHIFLETT told CS his car was not working, and he wouldn't be on back on base that evening, but he had the psilocybin mushrooms in his possession.

27. On 21 October 2022, OSI SA Joshua Raymond conducted surveillance at TARGET PREMISES. SA Raymond confirmed the vehicle registered to SHIFLETT was located at the residence. Closed Circuit Television (CCTV) footage of KAFB confirmed SHIFLETT drives the vehicle surveilled by Agents and drove his vehicle onto KAFB multiple times after telling CS it was inoperable.

28. On 24 Oct 2022, CS met with SHIFLETT. SHIFLETT told CS he forgot to bring the psilocybin mushrooms back to KAFB but had left over psilocybin tea if CS wanted it.

29. CS has provided Agents with information on SHIFLETT and GATICA to include the location of TARGET PREMISES, positive identification of GATICA and SHIFLETT, a vehicle description, and has assisted Agents with corroborating his/her information by completing a controlled buy/walk operation directed by OSI. Through the events described in this affidavit, CS followed the instructions given to him/her by Agents and did not deviate from those instructions during the controlled buy/walk operation. Information given by CS has been independently verified by Agents through surveillance, records checks and CCTV footage. Therefore, Agents consider CS to be reliable and the information provided by CS, as it relates to this affidavit to be true and accurate.

CONCLUSION

30. Based on the information and facts set forth in this affidavit, I respectfully submit that there is cause to believe that GATICA has conspired to distribute, and has distributed, controlled substances in violation of Title 21 United States Code, Sections 841 and 846. More specifically, the information and facts set forth in this affidavit show that that GATICA has distributed psilocybin mushrooms to others.

31. Based on the information and facts set forth in this affidavit, I further submit that there is also cause to believe that evidence of those offenses is likely to be found at the TARGET PREMISES. The CS has reported that GATICA stores and processes psilocybin mushrooms at the TARGET PREMISES, and that GATICA distributes those controlled substances from that location. Additionally, GATICA likely keeps records and other evidence of his drug trafficking activities at the TARGET PREMISES.

32. THEREFORE, I respectfully request that a warrant be issued authorizing the Office of Special Investigations, with appropriate assistance from other law enforcement officers, to enter the TARGET PREMISES, to include surrounding storage sheds, structures, detached garages, outbuildings, and property described in ATTACHMENT A, to search for, seize, and examine the contraband, evidence, and proceeds set forth in ATTACHMENT B.

Respectfully submitted,

BRENNAN.ELLISE.M.1540351208
Digitally signed by BRENNAN.ELLISE.M.1540351208
Date: 2022.11.01 12:04:41 -06'00'

Ellise Brennan
Special Agent, OSI

Electronically submitted and telephonically sworn on November 1, 2022:



UNITED STATES MAGISTRATE JUDGE

**Attachment A: TARGET PREMISES**

The TARGET PREMISES are located at 6 Mustang Road, Edgewood, New Mexico.

A long single level residence with white/cream siding is situated on the TARGET PREMISES . The residence has light grey trim around the windows and doors as well as grey trim around the roof. Online real-estate websites indicate the residence is four bedrooms and three bathrooms.

The front of the residence has one main white door. The white door has a small black bear on the bottom of the door. There are three sets of connected paneled windows on the front of the residence in addition to three single windows. There is concrete entrance leading up to the door.

The back of the residence has a wood porch with stairs leading to the ground.

One side of the residence has a white door leading to the exterior with grey metal stairs.

The residence sits on flat land with a chain linked fence surrounding the property. There is a shed with white siding and grey trim surrounding the edges, door and rooftop of the shed. The shed sits approximately 20-50 feet from the residence within the fenced in area. The shed appears to have a garage style door



Front view of residence at 6 Mustang Road, Edgewood, New Mexico



Side view of residence at 6 Mustang Road, Edgewood, New Mexico



Back view of residence at 6 Mustang Road, Edgewood, New Mexico



Floor plan of residence at 6 Mustang Road, Edgewood, New Mexico



Shed within the fenced in premises of 6 Mustang Rd, Edgewood, NM 87915

## ATTACHMENT B

*Property to be seized*

All records, information, and evidence relating to violations of 21 U.S.C. § 841 or 21 U.S.C. § 846, those violations involving AUSTIN GATICA, including:

1. Controlled substances, including, but not limited to marijuana and psilocybin mushrooms.

2. Drug paraphernalia, including but not limited to, scales, packaging materials, items for packaging and dangling drugs

3. Any and all drug customer lists, drug records, dealers list, or any notes containing the individual names of persons, telephone numbers, addresses of these customers or dealers and any corresponding records of accounts receivable.

4. Telephone or address books or notes containing telephone numbers and addresses of co-conspirators.

5. Messages, notes, correspondence, and/or communications between drug trafficking associates.

6. Photographs or videos of the drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

7. Digital video surveillance systems, including the associated storage media

8. Any and all computers, digital media, and storage media that reasonably appear to contain some or all of the records, information, and/or evidence described in Attachment B.

   As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer, digital media, or storage media; any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form

(such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "digital media" includes personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones.

The term "storage media" includes any physical object upon which electronic data can be recorded, such as hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media or digital medium.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, smartphones, tablets, server computers, and network hardware.

During the execution of the search of PREMISES 1 described in Attachment A, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of any individual, who is found at PREMISES 1 and reasonably believed by law enforcement to be a user of a device found at the premises, to the fingerprint scanner of the device; (2) hold a device found at the premises in front of the face those same individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.